**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

|  |  |  |
|---|---|---|
| BRANDON CALLIER, | § § § | |
| Plaintiff, | § § | EP-26-cv-00954-LS |
| v. | § § | |
| AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, a Texas Corporation | § § § § | |
| Defendant. | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.     Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in El Paso County, Texas, for all texts in this case.

2.     Defendant AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS ("Defendant") is a corporation organized and existing under the laws of Texas and can be served via its registered agent Chief Financial Officer, 200 E. Gains Street, Tallahassee, Florida 32399.

3.     Non-named party JOHN DOE is an unknown marketing company hired and authorized by Defendant to place telemarketing robocalls on its behalf.

4.     Non-named party TIMOTHY SHASHKOV ("Shashkov") is a natural person and authorized agent of Defendant.

**JURISDICTION AND VENUE**

1

5.     This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

6.     The Court has pendant jurisdiction over the Texas Business and Commerce Code claims under 28 U.S.C § 1367.

7.     This Court has general personal jurisdiction over Defendant because Defendant is a Texas corporation.

8.     Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas, he received a substantial, if not every single, phone call from Defendant, which is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     The FCC recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition,

3

the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20.      A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### TEXAS BUSINESS AND COMMERCE CODE CHAPTER 301

21.    A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(1)(A-C).

22.    A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor makes the call after 12 noon or before 9 p.m. on a Sunday or after 9 a.m. and before 9 p.m. on a weekday or a Saturday. TBCC § 301.051(b)(2).

23.    A consumer injured by a violation of this chapter may bring an action for recovery of damages. TBCC § 301.104.

24.    A consumer injured by a violation of this chapter may bring an action for recovery of damages. The damages awarded may not be less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs.

25.    Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

### TEXAS BUSINESS AND COMMERCE CODE § 305.053

26.    A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

27.    A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

28.     The fact that a claimant has recovered under a private action arising from a violation of

this chapter more than once may not limit recovery in a future legal proceeding in any manner.

Tex. Bus. & Com. Code § 305.055.

**FACTUAL ALLEGATIONS**

29.     Defendant offers senior life insurance via telemarketing through prerecorded messages.

30.     From February 25, 2026, to April 3, 2026, Plaintiff received at least thirty-six (36)

prerecorded phone calls to his business cell phone ending in 1804.

31.     From March 27, 2026, to April 6, 2026, Plaintiff received at least seventeen (17)

prerecorded phone calls to his business cell phone ending in 1830.

32.     Each of the phone calls in this case was a solicitation phone call selling life insurance.

33.     Each of the phone calls in this case utilized a spoofed caller identification number with a

915-area code.

34.     Each of the phone calls in this case contained the same prerecorded non-human robotic-

sounding voice message that stated:

> "Hello. Good Morning. My name is Sophie. Your zip code in the state of Texas qualifies for a senior final expense program. It guarantees your family receives up to $25,000 tax free within days and you're never stuck with funeral costs and unpaid bills. Your age is the main factor. So how old are you? That's great to hear that you're already taking steps to address this. However, with the rising cost of end of life expenses, we can offer you some of the best plans available at very low premiums. Would you like to compare your current plan with the new options we have?

35.     Plaintiff did not give Defendant consent to send any of these prerecorded messages.

36.     Table A displays each of the phone calls received by Plaintiff from Defendant.

**TABLE A**

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
|        |      |      |           |       |

| | | | | |
|---|---|---|---|---|
| 1. | 02/25/2026 | 11:07 AM | 915-741-3274 | Prerecorded Sophie |
| 2. | 03/03/2026 | 12:34 PM | 915-248-2654 | Prerecorded Sophie |
| 3. | 03/03/2026 | 1:21 PM | 915-223-2743 | Prerecorded Sophie |
| 4. | 03/04/2026 | 8:23 AM | 915-765-5642 | Prerecorded Sophie |
| 5. | 03/04/2026 | 10:09 AM | 915-248-0863 | Prerecorded Sophie. Got contract |
| 6. | 03/05/2026 | 1:05 PM | 915-659-6357 | Prerecorded Sophie |
| 7. | 03/09/2026 | 1:16 PM | 915-875-8518 | Prerecorded Sophie |
| 8. | 03/10/2026 | 8:27 AM | 505-387-8020 | Prerecorded Sophie |
| 9. | 03/11/2026 | 3:44 PM | 541-288-9645 | Prerecorded Sophie |
| 10. | 03/13/2026 | 1:31 PM | 915-777-3740 | Prerecorded Sophie |
| 11. | 03/13/2026 | 1:47 PM | 915-308-5072 | Prerecorded Sophie |
| 12. | 03/17/2026 | 12:35 PM | 912-712-9169 | Prerecorded Sophie |
| 13. | 03/17/2026 | 1:01 PM | 409-399-9790 | Prerecorded Sophie |
| 14. | 03/17/2026 | 1:39 PM | 582-257-6938 | Prerecorded Sophie |
| 15. | 03/17/2026 | 3:25 PM | 915-315-2678 | Prerecorded Sophie |
| 16. | 03/18/2026 | 10:39 AM | 609-355-8113 | Prerecorded Sophie |
| 17. | 03/24/2026 | 9:02 AM | 774-220-3728 | Prerecorded Sophie |
| 18. | 03/24/2026 | 12:11 PM | 681-880-1884 | Prerecorded Sophie |
| 19. | 03/242026 | 2:35 PM | 740-864-0544 | Prerecorded Sophie |

| | | | | |
|---|---|---|---|---|
| **20.** | 03/24/2026 | 3:00 PM | 863-874-1678 | Prerecorded Sophie |
| **21.** | 03/25/2026 | 9:05 AM | 564-546-8093 | Prerecorded Sophie |
| **22.** | 03/25/2026 | 12:19 PM | 985-837-0898 | Prerecorded Sophie |
| **23.** | 03/25/2026 | 1:04 PM | 915-233-9137 | Prerecorded Sophie |
| **24.** | 03/25/2026 | 1:50 PM | 915-881-1214 | Prerecorded Sophie |
| **25.** | 03/25/2026 | 2:59 PM | 915-349-3169 | Prerecorded Sophie |
| **26.** | 03/25/2026 | 3:00 PM | 586-800-7530 | 915-433-1845 |
| **27.** | 03/25/2026 | 4:28 PM | 915-257-1379 | Prerecorded Sophie |
| **28.** | 03/25/2026 | 11:42 AM | 915-757-0600 | 915-433-1845 |
| **29.** | 03/27/2026 | 1:58 PM | 915-265-1524 | Prerecorded Sophie 915-216-0794 |
| **30.** | 03/28/2026 | 1:42 PM | 915-318-9493 | Prerecorded Sophie |
| **31.** | 03/30/2026 | 12:58 PM | 915-899-6952 | Prerecorded Sophie 915-216-0794 |
| **32.** | 03/30/2026 | 1:33 PM | 419-454-8637 | Prerecorded Sophie |
| **33.** | 03/30/2026 | 4:07 PM | 740-864-0422 | Prerecorded Sophie |
| **34.** | 03/30/2026 | 4:08 PM | 430-440-7520 | Prerecorded Sophie |
| **35.** | 03/31/2026 | 9:35 AM | | Prerecorded Sophie |
| **36.** | 03/31/2026 | 9:44 AM | 915-742-1603 | Prerecorded Sophie – 915-216-0794 |
| **37.** | 3/31/2026 | 10:12 AM | 915-302-4049 | Prerecorded Sophie – 915-216-0794 |
| **38.** | 03/31/2026 | 10:17 AM | 317-765-5744 | Prerecorded Sophie |

8

| | | | | |
|---|---|---|---|---|
| **39.** | 03/31/2026 | 12:17 PM | 915-348-1731 | Prerecorded Sophie – 915-216-0794 |
| **40.** | 03/31/2026 | 12:28 PM | 915-603-5072 | Prerecorded Sophie – 915-216-0794 |
| **41.** | 03/31/2026 | 12:56 PM | 915-234-1437 | Prerecorded Sophie – 915-216-0794 |
| **42.** | 04/01/2026 | 1:13 PM | 915-800-2689 | Prerecorded Sophie – 915-216-0794 |
| **43.** | 04/01/2026 | 1:16 PM | 915-955-8462 | Prerecorded Sophie – 915-216-0794 |
| **44.** | 04/01/2026 | 3:06 PM | 915-288-3297 | Prerecorded Sophie – 915-216-0794 |
| **45.** | 04/01/2026 | 3:19 PM | 915-223-6027 | Prerecorded Sophie – 915-216-0794 |
| **46.** | 04/02/2026 | 10:24 AM | 915-899-4389 | Prerecorded Sophie |
| **47.** | 04/02/2026 | 2:59 PM | 915-313-4115 | Prerecorded Sophie |
| **48.** | 04/02/2026 | 4:10 PM | 915-751-4735 | Prerecorded Sophie |
| **49.** | 04/03/2026 | 12:35 PM | 915-875-8407 | Prerecorded Sophie |
| **50.** | 04/06/2026 | 7:17 AM | 915-266-5287 | Prerecorded Sophie – 915-216-0794 |
| **51.** | 04/06/2026 | 8:48 AM | 915-272-1867 | Prerecorded Sophie – 915-216-0794 |
| **52.** | 04/06/2026 | 9:05 AM | 915-306-4618 | Prerecorded Sophie – 915-216-0794 |
| **53.** | 04/06/2026 | 10:22 AM | 915-266-2017 | Prerecorded Sophie – 915-216-0794 |
| **54.** | 04/06/2026 | 11:00 AM | 915-493-6573 | Prerecorded Sophie – 915-216-0794 |
| **55.** | 04/06/2026 | 12:52 PM | 915-703-4329 | Prerecorded Sophie – 915-216-0794 |

37.     On February 25, 2026, at 11:07 AM, Plaintiff received a phone call that displayed 915-741-3274 on Plaintiff's caller identification. Plaintiff answered the phone call, and the same

prerecorded message in paragraph 34 began to play. Plaintiff attempted to purchase a life insurance policy as part of an investigation into the origin of the call, but the telemarketer hung up.

38.    Through information and belief, the telemarketer disconnected the previous call because Plaintiff is in ongoing litigation with Defendant.

39.    Plaintiff received two (2) additional phone calls on March 3, 2026, and another on March 4, 2026, at 8:23 AM, with the same exact prerecorded message as in paragraph 34.

40.    On March 4, 2026, at 10:09 AM, Plaintiff received a phone call that displayed 915-248-0863 on Plaintiff's caller identification. Plaintiff answered the phone call, and the same exact voice message as in paragraph 34 began to play.

41.    Plaintiff was on the phone with his cousin, Adean Hill Jr. ("Hill"), when the phone call came in. Plaintiff asked Hill to assist him in uncovering the origin of the phone call by obtaining a quote.

42.    Hill agreed, and Plaintiff combined the calls by merging the calls into a three-way call.

43.    Plaintiff enlisted Hill's assistance because Plaintiff's previous attempt to investigate the origin of the calls was short-circuited by the telemarketer hanging up the phone.

44.    The telemarketer began the solicitation by stating, "Thank you so much for calling. My name is 'Joe'. I'm with 'Top Insurance Deals' on the recorded line. This call is about a new low-cost final expense life insurance plan recently approved in your area."

45.    The telemarketer, "Joe" asked Hill questions about his age, income, beneficiary, health, and other qualifying questions before transferring hill to Shashkov to complete the insurance application.

46.    Shashkov asked Hill many of the same health-related questions, took Hill's personal information, bank account information, and completed the solicitation to sell Hill a life insurance policy with Defendant.

47.    On March 4, 2026, at 10:34 AM, Defendant sent a text message to Plaintiff's cell phone that contained a code to allow Shashkov to submit the insurance policy application. The text came from phone number 254-294-2530.

48.    On March 4, 2026, at 10:34 AM, Defendant sent another text message to Plaintiff's cell phone that contained a link to download the insurance policy application from Defendant. The text came from phone number 254-294-2530.

49.    On March 4, 2026, Defendant sent Hill an email requesting his signature on the insurance application. The email came from noreply@aatx.com.

50.    On March 4, 2026, Hill downloaded the insurance policy application from Defendant. The insurance policy listed Shashkov as the insurance agent and Defendant as the insurance company offering the life insurance coverage.

51.    The insurance application contains a tracking and/or processing code, M3273089.

52.    The insurance application lists Plaintiff's phone number, 915-334-1830, on the application.

53.    Plaintiff continued to receive the same prerecorded message as detailed in Table A.

54.    Plaintiff called each of the phone numbers in Table A. None of the numbers is a working number that is connected to Defendant.

55.    The insurance application did not contain a provision allowing Defendant to send Plaintiff prerecorded messages.

56.    On March 23, 2026, Plaintiff emailed Defendant's attorney alerting him of the unauthorized phone calls.

57.    From March 24, 2026, to March 30, 2026, Plaintiff received an additional sixteen (16) "Sophie" prerecorded message from Defendant.

58.    On March 30, 2026, Plaintiff informed Defendant that he had, "received the same prerecorded 'Sophie' phone call an additional 16 times since I alerted you."

59.    On March 31, 2026, Plaintiff again informed Defendant of the continued "Sophie" prerecorded phone calls.

60.    Plaintiff received an additional eleven (11) "Sophie" phone calls after March 31, 2026.

61.    Shashkov was appointed as an agent of Defendant and authorized to market insurance products, including by telephone, on behalf of Defendant.

62.    Defendant had the right to control the manner in which Shashkov conducted those telephone solicitations.

63.    Shashkov hired and authorized John Doe to act as a subagent of Defendant. Shashkov authorized Doe to make prerecorded phone calls on Defendant's behalf.

64.    Shashkov provided John Doe with the qualifying questions and instructed John Doe to ask those qualifying questions of each person solicited by John Doe on behalf of Shashkov.

65.    Shashkov provided John Doe with the age, income, health, state of residence requirements, and other qualifying

66.    Shashkov authorized the telemarketer to market life insurance by utilizing prerecorded messages as part of the marketing campaign.

67.    Shashkov approved the script for the prerecorded messages used by the telemarketer.

68.     Shashkov and the telemarketer utilized a shared telephone system that allowed the telemarketer to seamlessly transfer calls to Shashkov.

69.     Shashkov and the telemarketer shared an integrated customer database that allowed the telemarketer to instantly transfer customer information to Shashkov.

70.     The telemarketer was the authorized agent of Shashkov and the subagent of Defendant.

71.     Defendant appointed Shashkov to market and sell insurance on its behalf.

72.     Defendant maintained interim control over Shashkov, including when, and under what circumstances, it would accept applications and approve insurance policies submitted by Shashkov.

73.     Shashkov had both actual and apparent authority to act on behalf of Defendant.

74.     "A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts or when the principal ratifies them." *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997).

75.     Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of the former. *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

76.     Defendant was aware of the phone calls being made to solicit their insurance products, and Defendant was aware that those phone calls were being made utilizing prerecorded messages.

77.     On March 4, 2026, Shashkov submitted an application for insurance with Defendant.

78.     Defendant processed and approved the application with full knowledge that prerecorded telemarketing calls were made to solicit Plaintiff and other consumers utilizing prerecorded messages.

79.     None of the fifty-five (55) prerecorded phone calls properly stated the name of the company making the phone calls or the name of the seller.

80.     All artificial or prerecorded voice telephone messages shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. 47 C.F.R. § 64.1200(b)(1).

81.     A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately upon making contact with the consumer to whom the call is made, identifies himself or herself by name and the business on whose behalf the telephone solicitor is called. Texas Business and Commerce Code § 301.051(b)(1)(A-B).

82.     Defendant made at least four (4) solicitation phone calls to Plaintiff before 8 AM local time.

83.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

84.     On March 23, 2026, Plaintiff emailed Defendant and alerted them of the spoofed caller identification numbers used by Defendant.

85.     No emergency necessitated the calls.

### INJURY, HARM, AND DAMAGES AS A RESULT OF THE CALLS

86.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

87.     Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

88.     Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

89.    Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

90.    Plaintiff incurred increased electric bills as a result of more frequent charging of his cell phone related to the unauthorized phone calls.

## COUNT ONE:
### Non-Emergency Prerecorded Call to Cellular Telephones, 47 U.S.C. 227(b)(1)(A)(iii)

91.    Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-90.

92.    The foregoing acts and omissions of Defendant and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing ATDS texts to Plaintiff's cellular telephone numbers without his prior express written consent.

93.    Plaintiff was statutorily damaged at least fifty-five (55) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

94.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

## COUNT TWO:
### Violations of Texas Business and Commerce Code § 301.051(b)(1)(A-C)
### Failure to Identify

95.    Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-94.

96.     Defendant did not immediately after making contact with the consumer to whom the call is made, identify himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

97.     Plaintiff was damaged at least fifty-five (55) times by Defendant.

98.     A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer good or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

99.     Defendant seeks damages in the amount of 1,000 per violating phone call.

**COUNT THREE**
**Violations of Texas Business and Commerce Code § 305.053**
**Prerecorded Phone Calls in violation of 47 U.S.C. 227(b)**

100.    Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-99.

101.    Defendant placed at least fifty-five (55) prerecorded phone calls to Plaintiff in violation of 47 U.S.C. § 227(b).

102.    A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in theist ate against the person who originates that communication. Tex. Bus. Com. Code § 305.053.

103.    Plaintiff was statutorily damaged at least fifty-five (55) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).

104.    If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. CodeAMERI § 305.053(c)(1).

105.    The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.

### COUNT FOUR
**Violations of Texas Business and Commerce Code § 301.051(b)(2)**
**Telemarketing Calls before 9 AM Local Time**

106.    Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-105.

107.    A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor makes the call after 12 noon or before 9 p.m. on a Sunday or after 9 a.m. and before 9 p.m. on a weekday or a Saturday. TBCC § 301.051(b)(2).

108.    Defendant called Plaintiff at 8:36 AM local time on February 27, 2026.

109.    Plaintiff was damaged at least two (2) times by Defendant.

110.    A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer good or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

111.    Plaintiff seeks damages in the amount of 1,000 per violating phone call.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendant as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C.      An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C.

227(b) intentional violations for fifty-five (55) calls;

D.      An award of $5,000 per phone call in statutory damages arising from intentional

violations of the Texas Business and Commerce Code 301.051(b)(1)(A-C) for fifty-five (55)

phone calls.

E.      An award of $1,500 per call in statutory damages arising from TBCC 305.053 intentional

violations for fifty-five (55) calls;

F.      An award of $1,000 per phone call in statutory damages arising from intentional

violations of the Texas Business and Commerce Code 301.051(b)(2) for four (4) phone calls;

G.      An award to Plaintiff of damages, as allowed by law under the TCPA;

H.      An award to Plaintiff of damages, as allowed by law under the TBCC;

I.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

J.      Such further relief as the Court deems necessary, just, and proper.


Dated: April 6, 2026,                       Respectfully submitted,

                                            /s/ Brandon Callier

                                            _____
                                            Brandon Callier
                                            Plaintiff, Pro Se
                                            1490 A George Dieter Drive
                                            #174
                                            El Paso, TX 79936
                                            915-383-4604
                                            Callier74@gmail.com

18