**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| BRANDON CALLIER<br><br>Plaintiff,<br>v.<br><br>AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-26-cv-00954-LS |

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant American-Amicable Life Insurance Company of Texas ("American-Amicable" or "Defendant") hereby respectfully files its *Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint*. American-Amicable states as follows:

## I. INTRODUCTION

Plaintiff's *Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint* [Dkt. 13] (the "Response") confirms the implausibility of Plaintiff's claims. His admissions foreclose each liability theory, and his Response offers only conclusions, speculation, and requests for discovery. Each argument fails.

*First,* Plaintiff does not dispute that American-Amicable did not initiate or place the calls, that no number connects to American-Amicable, or that the prerecorded calls did not identify American-Amicable. Those admissions foreclose direct liability. Plaintiff also pleads no facts—contract, communication, payment record, or otherwise—showing vicarious liability or any American-Amicable relationship with John Doe, and Plaintiff conflates Shashkov's alleged control with American-Amicable's. He therefore fails to plead the "high and very significant" control required to impose vicarious liability on American-Amicable for any purported actions of

Doe or Shashkov.

*Second*, apparent authority fails because neither the "Sophie" calls nor John Doe referenced American-Amicable—Doe claimed to be with "Top Insurance Deals." The Texas Insurance Code does not alter the federal common-law agency standard governing TCPA vicarious liability. Rule 12(b)(6) requires plausible facts, not labels and conclusions.

*Third*, ratification fails because prior TCPA suits, BBB complaints, and notice to counsel do not show "full knowledge of all material facts" about the specific unauthorized calls or intentional adoption of them. Nor does Plaintiff allege American-Amicable could control, direct, or stop the callers.

*Fourth*, Plaintiff's own admissions confirm speculation: he merely "suspects" Defendant hired the telemarketers directly (Resp., p. 9) and cannot know who did so without discovery (Resp., p. 8).

*Finally*, Plaintiff is not a DTPA "consumer" because Plaintiff's cousin, Hill applied for the policy, and Plaintiff alleges an investigation—not a good-faith purchase attempt. His proposed TCPA, TBCC § 305.053, and DTPA recoveries for the same calls are duplicative. Accordingly, American-Amicable's *Motion to Dismiss Plaintiff's Amended Complaint* [Dtk. 11] (the "Motion") should be granted.

## II. ARGUMENT

### A. Plaintiff Fails to Plead Sufficient Facts to Demonstrate Direct or Vicarious Liability Under the TCPA

Rule 12(b)(6) requires "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's Response does not adequately rebut American-Amicable's arguments that Plaintiff has failed to plead facts sufficient to demonstrate either direct or vicarious liability under the TCPA.

As to direct liability, Plaintiff's Response is notably silent. Plaintiff does not dispute that American-Amicable did not "initiate" or "physically place" any of the sixty-one calls at issue. (*See* Def.'s Mot., pp. 11-15). Plaintiff's own Amended Complaint establishes that the prerecorded "Sophie" calls were initiated by an unidentified third-party telemarketer, that "Joe" identified himself as being with "Top Insurance Deals," and that none of the calling numbers are connected to American-Amicable. (Dkt. 9 at ¶¶ 111, 112, 126). This Court's decision in *Gonzalez v. Savings Bank Mutual Life Insurance Company of Massachusetts*, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025), is directly on point: where the complaint establishes that a telemarketer—not the insurer—initiated the calls, the insurer "cannot be directly liable for any of the calls." Accordingly, Plaintiff's failure to address this argument in his Response concedes that American-Amicable is not directly liable for any of the purported calls at issue in this litigation.

Plaintiff's Response also does not sustain his vicarious liability theory. He repeats the Amended Complaint's legal conclusions but identifies no specific facts, authority, or document showing a direct relationship between American-Amicable and John Doe, or between American-Amicable and Shashkov. *See infra* at Sections B-E. Accordingly, because Plaintiff pleads neither direct liability nor non-conclusory facts supporting vicarious liability, his TCPA claim should be dismissed.

### B. Plaintiff Fails to Plead Sufficient Facts to Demonstrate American-Amicable had a "High and Very Significant" Level of Control over the Telemarketer, John Doe, or Shashkov

Imposing vicarious liability on a principal for its agent is only proper when the principal itself had high and very significant control, or the right to control, "the manner and means of the telemarketing campaign." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023). Plaintiff's Amended Complaint does not allege that American-Amicable itself: (i) provided a script for the "Sophie" prerecorded messages; (ii) had the sole authority to unilaterally terminate

John Doe's telemarketing operations; (iii) received detailed information about John Doe's marketing strategies; or (iv) maintained the ability to suspend John Doe from marketing its products.

Instead, Plaintiff's Response argues that American-Amicable is liable for all of Shashkov's acts because he was appointed by American-Amicable as its licensed insurance agent. But Plaintiff's reliance on Sections 4001.051(b) and 4001.052 of the Texas Insurance Code are misplaced because those provisions do not speak to control at all—they merely codify the general rule that a soliciting agent is the insurer's agent "for the purposes of all liabilities, duties, and penalties imposed by law," and that such agent is not the insured's agent in a coverage dispute between the insurer and the insured. TEX. INS. CODE §§ 4001.051(b), 4001.052. Neither provision purports to define or expand the federal common-law agency standard that governs vicarious liability under the TCPA, nor could it: state law cannot supply the substantive standard for a federal statutory cause of action. *See Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023) (TCPA vicarious liability is governed by *federal* common law of agency).

Finally, Plaintiff's argument conflates Shashkov's alleged control over John Doe with American-Amicable's control. As American-Amicable's Motion demonstrated, the control functions Plaintiff describes are attributed solely to Shashkov, not to American-Amicable. (*See* Dkt. 9 at ¶¶ 160-166; Def.'s Mot., pp. 17-18). Accordingly, Plaintiff's Response does not cure his failure to allege facts demonstrating that American-Amicable exercised a "high and very significant" level of control over the manner and means of the telemarketing campaign.

### C. Plaintiff Fails to Plead Sufficient Facts to Demonstrate Apparent Authority Over Shashkov

Apparent authority exists whenever a principal "expressly or implicitly grants the agent authority to perform a particular act," with control over the agent's actions as the "essential

element." Restatement (Third) of Agency § 3.01 (2006); *Gonzalez*, 2025 WL 1145266, at *5. More specifically, apparent authority arises only when the principal's own conduct leads a third party to reasonably believe the agent has authority to act on the principal's behalf. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). For TCPA purposes, the operative question is whether the principal controlled, or had the right to control, the "manner and means" of the telemarketing campaign—not merely whether the agent held a license. *Callier v. Wide Merchant Investment, Inc.,* 671 F.Supp.3d 736 (W.D. Tex. Apr. 27, 2023).

Plaintiff points to allegations that American-Amicable appointed Shashkov as an agent, authorized him to market by telephone, gave him broad authority to decide the manner of marketing, had the right to control his solicitations, and "maintained interim control" over accepting applications and approving policies. (Resp., pp. 6-7 (citing Dkt 9, ¶¶ 157-159, 169)). But agent appointment establishes, at most, the "fact of agency," which alone cannot support liability. *See Great Am. Life Ins. Co. v. Lonze*, 803 S.W.2d 750, 754 (Tex. App.—Dallas 1990, writ denied). The allegation that American-Amicable let Shashkov decide his own marketing manner (Dkt 9, ¶ 158) is the opposite of control. Moreover, American-Amicable's right to accept or reject applications and approve policies (Dkt 9 ¶¶ 159, 169) is an ordinary underwriting function, not control over the manner and means of the telemarketing campaign that generated those applications. Def.'s Mot., p. 20; *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 530 (5th Cir. 2014).

Sections 4001.051(b) and 4001.052 of the Texas Insurance Code do nothing to support Plaintiff's claims—they merely designate a soliciting agent as the insurer's agent for statutory liabilities and coverage disputes, without defining or expanding the federal common-law agency standard that governs TCPA vicarious liability. TEX. INS. CODE §§ 4001.051(b), 4001.052; *Callier*

*v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023). Accepting Plaintiff's theory would make every insurer automatically liable under the TCPA for the unauthorized conduct of every agent it has ever licensed—a result none of Plaintiff's authorities support, and one that would swallow the control requirement whole.

Nor did American-Amicable's own conduct create a reasonable belief that Shashkov was acting for it: nothing in the prerecorded "Sophie" calls or "John Doe's" statements referenced American-Amicable—the caller identified himself as being with "Top Insurance Deals." No reasonable person could have believed the callers were acting on American-Amicable's behalf. (Def.'s Mot., pp. 19-20). *Gonzalez* is instructive on this same point: the plaintiff there failed to plead facts about the insurer's conduct that would have reasonably led a consumer to believe an agency relationship existed for purposes of the telemarketing calls. *Gonzalez*, 2025 WL 1145266, at *5. Plaintiff's allegations here—bare agent appointment, delegated marketing discretion, and an ordinary right to accept or reject applications—are no more than what *Gonzalez* held insufficient.

Accordingly, Plaintiff has failed to allege facts sufficient to establish that Shashkov acted with apparent authority conferred by American-Amicable with respect to the telemarketing campaign at issue.

### D. Plaintiff Fails to Allege Apparent Authority Over John Doe Telemarketer

Plaintiff's Response argues that he has alleged apparent authority over the John Doe telemarketer. However, Plaintiff solely re-asserts the same conclusory allegations contained in his Amended Complaint, and he contends that demanding factual support for these allegations "improperly demands evidentiary proof at the pleading stage." (Resp., p. 7).

But Plaintiff misunderstands American-Amicable's argument. Rule 12(b)(6) does not require evidence, but it does require "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The defect in Plaintiff's Amended

Complaint is not the absence of evidence; it is the absence of well-pleaded facts. Plaintiff offers only legal conclusions about American-Amicable's alleged control over Shashkov, John Doe, or the "Sophie" calls, and he admits he merely "suspects" Defendant hired the telemarketers directly. He identifies no mechanism, terms, or communications supporting the alleged arrangement. As such, Plaintiff's allegations are legal conclusions masquerading as facts.

As American-Amicable's Motion demonstrated, Plaintiff does not identify a single contract, communication, payment record, or any other document evidencing a direct relationship between American-Amicable and John Doe. (Def.'s Mot., p. 21). Plaintiff does not allege who at American-Amicable directed this alleged arrangement, when such instructions were given, or through what channel they were communicated. *See Gonzales v. Cordoba Legal Group, LLC*, No. 3:23-CV-00355-KC, 2026 WL 772359, at *3 (W.D. Tex. Feb. 5, 2026) ("Where plaintiff offers only conclusory allegations that the defendants were vicariously liable for the telemarketing calls, courts cannot reasonably infer the existence of an agency relationship.").

Accordingly, Plaintiff has failed to allege facts sufficient to establish that John Doe acted with apparent authority from American-Amicable.

### E. Plaintiff Fails to Plead Facts Sufficient to Demonstrate Ratification.

Ratification requires "full knowledge of all material facts" concerning the specific unauthorized act and an intentional decision to adopt it. *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). Here, Plaintiff does not allege that American-Amicable learned of the specific calls at issue and then affirmatively adopted or endorsed them. Instead, he relies on unrelated TCPA litigation, BBB complaints, and alleged notice to counsel in a separate lawsuit, and claims that American-Amicable ratified misconduct because it could not stop the purported calls. But unrelated litigation does not establish full knowledge of this campaign, and Plaintiff does not allege American-Amicable could control, direct, or stop the

callers. A party cannot ratify conduct it lacks power to control. Plaintiff also argues that American-Amicable ratified the conduct "in advance" by directing John Doe's calling activity, scripts, and caller identification. (Resp., p. 8). But as explained above, those allegations are conclusory and unsupported by any factual foundation.

Finally, Plaintiff's reliance on prior settlements with American-Amicable does not establish ratification of the conduct alleged here. The prior lawsuits involved different agents and different purported call campaigns, and any settlements carry no admission of liability. (Def.'s Mot., p. 25). A court's denial of a motion to dismiss in a prior case on a different factual record is not binding on this Court and does not establish that American-Amicable ratified the specific telemarketing campaign at issue here.

**F. Plaintiff's Alternative Theories of Liability Are Individually Implausible.**

Alternative pleading is not a mechanism to permit the advancement of implausible theories that lack factual support. While Federal Rule of Civil Procedure 8(d)(2) may permit alternative pleading, each alternative theory must independently satisfy the plausibility standard under *Iqbal* and *Twombly*. "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citing *Twombly,* 550 U.S. at 555, 557).

Here, however, Plaintiff's alternative theories of liability about who hired the telemarketer each fail because they require speculation to connect the alleged conduct to the alleged harm. For example, Plaintiff's Response concedes that he only "***suspects***" that Defendant hired the telemarketers directly. (Resp., p. 9) (emphasis added). Merely suspecting misconduct, by definition, cannot give rise to a right of relief above the speculative level.

Plaintiff's Response further admits that his direct-hire theory is "based on" TCPA allegations raised against Defendant in *other lawsuits*. (*See* Resp., pp. 8-9). Plaintiff specifically states that his theory is "***based on*** the number of TCPA allegations raised against Defendant across multiple states and multiple insurance agents, and the commonality across each of the TCPA allegations . . . ." (Resp., p. 9) (emphasis added). Simply put, Plaintiff's argues that, *based on unrelated allegations*, he "***suspects*** that Defendant more likely than not hired the telemarketers directly." *Id.* (emphasis added). However, Plaintiff cannot piggyback off allegations asserted in separate litigation to satisfy his own pleading obligations because conclusory references to other lawsuits are not a substitute for an adequate factual pleading.[1] To be sure, Plaintiff does not reference a single case establishing liability against Defendant for *anything*, let alone the same or similar conduct alleged in the present suit.

Consequently, Plaintiff's alternative theories about who hired the telemarketer must independently fail. Indeed, Plaintiff admits that he does not know who hired the telemarketer and that his direct-hire theory is based on suspicion derived from unrelated TCPA litigation against Defendant, opposed to specific factual allegations pertaining to Plaintiff's claims in the present lawsuit. (*See* Dkt. 9 at ¶ 142; Resp., pp. 8-9). Thus, dismissal without leave to amend is warranted and appropriate.

### G. Plaintiff Lacks Consumer Standing Under the DTPA—Count Five Must Fail as a Matter of Law.

Plaintiff is not a consumer under the Texas Deceptive Trade Practices Act ("DTPA") for two independent reasons. It was Plaintiff's cousin, Adean Hill ("Hill"), not Plaintiff, that applied for life

---

[1] "[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *McZeal v. Deutsche Bank Nat'l Tr. Co.*, 726 Fed. Appx. 968, 971 (5th Cir. 2018) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

insurance policy on March 4, 2026 (*see* Dkt. 9 at ¶¶ 108-116), and Plaintiff admits that he engaged with the telemarketer on February 25, 2026, with the objective of investigating the call's origins, opposed to a subjective good faith attempt to acquire a policy (*see* Dkt. 9 at ¶¶ 104, 110).

**(i) Plaintiff Admits that Hill Applied for a Policy on March 4, 2026, Not Plaintiff.**

Plaintiff is not a consumer under the DTPA because Plaintiff did not seek or acquire goods or services by purchase or lease. Plaintiff's own allegations establish that it was Hill, not Plaintiff, who applied for a policy with Shashkov, as is made evident on the face of the Amended Complaint:

- "The telemarketer, 'Joe' ***asked Hill questions*** about his age, income, beneficiary, health, and other qualifying questions ***before transferring [H]ill to Shashkov to complete the insurance application***." Pl.'s Am. Compl. (Dkt. 9), ¶ 113 (emphasis added);
- "Shashkov then took Hill's personal information, bank account information, and completed the solicitation ***to sell Hill a life insurance policy*** . . . .". Pl.'s Am. Compl. (Dkt. 9), ¶ 116 (emphasis added); and
- ". . . Defendant ***sent Hill an email requesting his signature on the insurance application***."). Pl.'s Am. Compl. (Dkt. 9), ¶ 116 (emphasis added).

It was Hill who submitted the March 4, 2026 policy application, provided personal and banking information, and was asked to sign the insurance application. Plaintiff enlisted his cousin as a strawman to advance Plaintiff's pre-litigation tactics, but Plaintiff cannot manufacture DTPA consumer status from a transaction to which he was an effective stranger.

**(ii) Plaintiff Admits that He Engaged with the Telemarketer for an Investigative Purpose—Not a Good Faith Objective of Purchasing a Policy.**

Texas law requires a prospective purchaser to approach the seller with the subjective good faith objective of purchasing. *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 183 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (citing *La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558, 567 (Tex.1984)). Plaintiff's allegations are unequivocal that his intent in engaging with the alleged telemarketer was investigative in nature, not with the good faith objective of purchasing a policy. Specifically, he states:

- "***Plaintiff attempted to purchase a life insurance policy as part of an investigation into the origin of the call*** . . . ." Pl.'s Am. Compl. (Dkt. 9), ¶ 104 (emphasis added); and
- "Plaintiff enlisted Hill's assistance because ***Plaintiff's previous attempt to investigate the origin of the calls*** was short-circuited by the telemarketer hanging up the phone." Pl.'s Am. Compl. (Dkt. 9), ¶ 110 (emphasis added).

Plaintiff's post-hoc assertion claiming that he had a good faith intent to purchase a life insurance policy is fatally undermined by Plaintiff's admission that he enlisted his cousin, Hill, to assist his *investigation of the origin of the calls*. That is, he did not enlist his cousin to help him obtain a policy through ordinary means (e.g., contacting a carrier, insurance agent, or utilizing policy locator service, etc.), opposed to explicitly using his cousin as a strawman for Plaintiff's manufacture of the claims asserted herein. It is evident on the face of the Amended Complaint that Plaintiff was not seeking to acquire a life insurance policy, he was seeking to identify a future defendant to target. Dismissal with prejudice is warranted.

### H. Counts One, Three, and Five Are Duplicative Because They Seek Separate Recoveries for the Same Conduct, but TBCC § 305.005 and the DTPA Do Not Permit Duplicative Recovery.

Plaintiff cannot recover separately under the TCPA, TBCC § 305.053, and the DTPA for the same alleged conduct, practice, or act. Plaintiff's Response erroneously conflates TBCC § 305.055's language precluding limits on recovery for violations under Chapter 305 "in future legal proceedings(s)" even where a claimant "has [previously] recovered" for a violation under that chapter. (*See* Resp., p. 11). That provision does not permit duplicative recovery for the same conduct arising under the same allegations pertaining to the same transaction.

The DTPA unambiguously states that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice." TEX. BUS. & COM. CODE. § 17.43. Here, Counts One, Three, and Five arise from the same sixty-one calls

forming the bases of each Count.[2] Plaintiff cannot recover separately under the TCPA, TBCC § 305.053, and the DTPA for the same alleged conduct without impermissible double/triple recovery. *See Amarillo Services, Inc. v. Hartz Mountain Corp*., 980 F.2d 1444 (5th Cir. 1992) (holding that "the Texas Supreme Court would not allow double recovery for a single injury in suits asserting the DTPA in conjunction with other claims").

## I. Shashkov's Other Insurance Appointments are Relevant Because Plaintiff's Allegations Do Not Plausibly Support the Imputation of a Telemarketing Campaign to Defendant.

Plaintiff's Response disregards American-Amicable's argument that the Amended Complaint fails to allege a plausible basis for imputing liability to American-Amicable for the sixty (60) alleged calls that never went beyond a prerecorded message, as Plaintiff does not allege any facts that would permit the Court to infer that American-Amicable had any connection to those calls. (*See* Def.'s Mot., at p. 8). Plaintiff ignores the fact that Shashkov's appointment with five other carriers undermines Plaintiff's theories of liability, and Plaintiff admits in his Response that he has no basis for his allegations pertaining to Shashkov's alleged marketing practices.

Here, Plaintiff's own words best capture the speculative nature of his theories of liability: "***We do not know any relevant information regarding Shashkov's marketing practices***". (Resp., p. 10) (emphasis added). Plaintiff's Response thereby admits that his allegations regarding Shashkov's marketing practices are wholly speculative, as he professes that he does not know *any* relevant information regarding the same. His other contentions are otherwise confusing and do nothing to rectify or mitigate the consequence of his admission.

[2] *See* Pl.'s Am. Compl., ¶ 205 (Count One) ("Plaintiff was statutorily damaged at least sixty-one (61) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above . . . ."); ¶ 215 (Count Three) ("Plaintiff was statutorily damaged at least sixty-one (61) times under 47 U.S.C § 227(b)(3)(B) by Defendant by the telephone calls described above . . . ."); ¶ 225 (Count Five) ("Defendant intentionally transmitted false caller identification sixty-one (61) times while making telephone solicitation phone calls . . . .").

First, Plaintiff argues that Shashkov's appointment with other insurance carriers is "irrelevant" because ". . . if Defendant hired the telemarketer as Plaintiff posits, [] only an American-Amicable life insurance policy would have been sold during the solicitation phone call" (Resp., pp. 9-10). Plaintiff's argument, however, is reliant on circular reasoning opposed to plausibly pleaded factual allegations. Plaintiff's argument asserts a speculative premise (Defendant hired the telemarketer) and then infers his desired conclusion (only an American-Amicable life insurance policy would have been sold) without identifying plausibly plead factual allegations in support of the premise—and certainly none that support the conclusion.

Secondly, Plaintiff argues that "Shashkov would have only sold Defendant's policy regardless of what other insurance companies Shashkov may have been appointed . . . . [because] Shashkov sold the insurance policy that best fit the profile of Adean Hill ('Hill')". (Resp., p. 9). Tellingly, Plaintiff does not cite any plausibly pleaded facts in support of his self-serving and conclusory assertion because there are no allegations in the Amended Complaint that would support it.

Shashkov's appointments with other carriers are relevant because they undermine Plaintiff's assertion that his claims have been plausibly pleaded. Plaintiff's theories are further undermined by his admission that "***[w]e do not know any relevant information regarding Shashkov's marketing practices***" (Resp., p. 10) (emphasis added), which begs the question of how Plaintiff can admit the foregoing while also asserting numerous allegations purporting to describe Shashkov's alleged marketing practices.[3] The answer is that Plaintiff's theories of liability

[3] *Compare* Pl.'s Am. Compl., ¶¶ 160 - 166 ("Shashkov hired and authorized John Doe to act as a subagent of Defendant. Shashkov authorized Doe to make prerecorded phone calls on Defendant's behalf. Shashkov provided John Doe with the qualifying questions and instructed John Doe to ask those qualifying questions of each person solicited by John Doe on behalf of Shashkov. Shashkov exercised control over the John Doe telemarketer by providing age, income, health, state of

cannot survive such irreconcilable inconsistencies Indeed, Plaintiff's Response confirms that his Shashkov allegations are founded upon implausible guesswork.

Plaintiff cannot, on the one hand, plausibly allege that Shashkov carried out specific wrongful marketing practices and, on the other hand, admit that Plaintiff has no relevant information regarding Shashkov's marketing practices. The result is that Plaintiff has failed to plausibly plead a theory of liability after a chance to amend; therefore, dismissal without leave to replead is appropriate.

Dated: July 31, 2026. Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: /s/ *Emilee N. Crowther*
Emilee N. Crowther, Lead Attorney
Texas Bar No. 24109772
emilee.crowther@huschblackwell.com
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Phone: 512.479.1163
Fax: 512.479.1101

Javon Johnson
Texas Bar No. 24120929
javon.johnson@huschblackwell.com
Husch Blackwell LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Phone: 214.999.6163
Fax: 214.999.6170

---

residence requirements, and other restrictions as the qualifying attributes for the insurance policies. Shashkov authorized the telemarketer to market life insurance by utilizing prerecorded messages as part of the marketing campaign. Shashkov approved the script for the prerecorded messages used by the telemarketer. Shashkov and the telemarketer utilized a shared telephone system that allowed the telemarketer to seamlessly transfer calls to Shashkov. Shashkov and the telemarketer shared an integrated customer database that allowed the telemarketer to instantly transfer customer information to Shashkov.") *with* Pl.'s Resp., p. 10 ("***We do not know any relevant information regarding Shashkov's marketing practices***") (emphasis added).

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on, July 31, 2026, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

*/s/ Emilee N. Crowther*
Emilee N. Crowther